UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

**EDITH VOGEL**,

                *Plaintiff*,

v.                                        Case No. 2:22-cv-04051

**CARRIE TERGIN**, in her official capacity as
Mayor of the City of Jefferson, and the
**CITY OF JEFFERSON, MISSOURI**,

                *Defendants*.

## SUGGESTIONS IN SUPPORT OF
## MOTION FOR TEMPORARY RESTRAINING ORDER
## AND PRELIMINARY INJUNCTION

Plaintiff Edith Vogel seeks a temporary restraining order and preliminary injunction which orders Defendants to replace and maintain her pavers with her original message.

**I. Applicable Law**

Under Federal Rule of Civil Procedure 65, the Court may issue a temporary restraining order and a preliminary injunction. To grant injunctive relief, the Court considers four factors:

(1) the movant's likelihood of success on the merits;

(2) the threat of irreparable harm to the movant;

(3) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; and

(4) the public interest.

*Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc). The Court must weigh the four factors "to determine whether on balance they weigh towards granting the injunction." *Baker Elec. Co-op., Inc. v. Chaske*, 28 F.3d 1466, 1472 (8th Cir. 1994) (citations and quotations omitted). "[T]he likelihood of success on the merits is most significant." *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013) (citations and quotations omitted).

**II. Background**

In 2021, Jefferson City began construction of the Bicentennial Bridge, a pedestrian bridge connecting the Missouri State Capitol complex with "Adrian's Island," an undeveloped parcel along the Missouri River which is cut off from shore by the Union Pacific Railroad tracks. To support the bridge project, the City and Mayor Tergin launched a "paver" fundraising campaign, whereby the City would sell engraved stone pavers to place in a new park around the bridge's landing on Adrian's Island.

Defendants provided that pavers were to be limited to one of two sizes (9.5x15.5" or 4¼x7¾"), limited lines and characters according to size, and designated the place on Adrian's Island where they were to be placed. Defendants did not adopt or publish content guidelines for the paver campaign. Nor was there any kind of review process whatsoever. Subject to these requirements, donors were invited to purchase "PERSONALIZED" pavers and "PROVIDE YOUR MESSAGE." Every paver ordered during the initial round of fundraising was placed exactly as submitted.

Plaintiff purchased two pavers through the City's program which bore the following inscription: "Union Camp Lillie notes: deciding against attack the confederate army under Gen.

Sterling Price turned from Jefferson City Oct. 7, 1864." The City subsequently placed Plaintiff's pavers with those purchased by others.

At some point after their placement, Mayor Tergin became aware of the message on Plaintiff's pavers. Mayor Tergin and other City officials are deeply opposed to the message of Plaintiff's pavers because of their association with the history of Camp Lillie. Mayor Tergin previously led a City Council action to remove a Civil War monument from City property on Moreau Drive which had similar language in its inscription and referred to the same historical events.

On or about December 23, 2021, Defendants ordered Plaintiff's pavers removed because of the message they conveyed, especially their similarity to the Moreau Drive monument and reference to Camp Lillie, and Defendants' employees subsequently removed Plaintiff's pavers. Defendants did not remove any other pavers, including several containing personalized messages and Bible verses. Mayor Tergin explained the decision to the Jefferson City *News-Tribune* at the time: "The urgency in removing these particular pavers was that they reference the rock which council had previously voted to remove. So, keeping in line with that decision that was made by council, I felt it appropriate to remove those." *See* Michael Shine, *Two pavers removed from newly opened park due to Civil War inscription*, News-Tribune (Dec. 24, 2021), https://www.newstribune.com/news/2021/dec/24/two-pavers-removed-from-newly-opened-park-due-to-c/. Defendants informed Plaintiff that she could keep the pavers by changing the message conveyed, or she could receive a refund for her donation. Plaintiff chose a refund.

In January 2022, Mayor Tergin stated the flyer would be updated and pavers would be restricted to donor names only. *See* Michael Shine, *No review of pavers' messages undertaken*

*after two removed due to Civil War inscription*, News-Tribune (Jan. 8, 2022), https://www.newstribune.com/news/2022/jan/08/no-review-of-messages-on-pavers-undertaken-after/. As of the filing of this suit, the flyer is unchanged. *See* Complaint Exhibit A.

**III. Analysis**

A. Plaintiff Has a Likelihood of Success on the Merits.

Under 42 U.S.C. § 1983, a plaintiff may hold state actors accountable for "deprivation of any rights, privileges, or immunities secured by the Constitution." By removing her pavers, the City violated Plaintiff's right to free speech by acting "to suppress expression merely because the public officials oppose a speaker's view." *Bowman v. White*, 444 F.3d 967, 976 (8th Cir. 2006).

The First Amendment loathes government suppression of speech. "[A] government, including a municipal government vested with state authority, has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (citations and quotations omitted). "Content-based laws— those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id*. Laws "that were adopted by the government because of disagreement with the message the speech conveys" are likewise presumptively unconstitutional and subject to strict scrutiny. *Id*.

1. *Public Forum Analysis*

Although not a model of clarity, the Supreme Court's public forum jurisprudence generally "recognize[s] three types of government-controlled spaces: traditional public forums, designated

public forums, and nonpublic forums." *Minn. Voters Alliance v. Mansky*, --- U.S. ---, 138 S. Ct. 1876, 1885 (2018). The latter two categories are relevant here.

Designated public forums are "spaces that have not traditionally been regarded as a public forum but which the government has intentionally opened up for that purpose." *Id.* (citations and quotations omitted). In designated public forums, the "the government may impose reasonable time, place, and manner restrictions on private speech, but restrictions based on content must satisfy strict scrutiny, and those based on viewpoint are prohibited." *Id.*

"In a nonpublic forum, on the other hand—a space that is not by tradition or designation a forum for public communication—the government has much more flexibility to craft rules limiting speech." *Id.* (citations and quotations omitted). "The government may reserve such a forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and **not an effort to suppress expression merely because public officials oppose the speaker's view**." *Id.* (emphasis added).[1]

Here, the Defendants created a designated public forum. They enacted reasonable time, place, and manner restrictions by designating the size, line and character limits, and placement

---

[1] Previous versions of the forum framework have also discussed a "limited public forum." *See Bowman v. White*, 444 F.3d 967, 976 (8th Cir. 2006) ("a limited public forum is a subset of the designated public forum that … limits the expressive activity to certain kinds of speakers or to the discussion of certain subjects."). *Mansky* seems to merge the "nonpublic" and "limited public" categories, and two justices have explicitly backed that approach. *See Am. Freedom Defense Initiative v. King County*, 577 U.S. 1202 (2016) (THOMAS, J. dissenting from denial of certiorari).

of the pavers. Subject to these permissible requirements, Defendants invited the public to purchase "PERSONALIZED" pavers and "PROVIDE YOUR MESSAGE" without any content or subject-matter restrictions. In addition to Plaintiff's historical quote, at least two other pavers bear Bible verses and others convey personal messages like "NATURE'S DOORWAY" and "WE LOVE THE MUDDY MO." Those other communicative pavers remain on Adrian's Island, and were not targeted for removal by Defendants. Defendants' censorship of Plaintiff's pavers in a designated public forum is thus subject to strict scrutiny. Their actions plainly cannot survive strict scrutiny, as Defendants have no compelling interest in suppressing Plaintiff's historical quote and their actions were not narrowly tailored to achieve any such interest.

Defendants might argue that they have created a nonpublic forum instead, but to no avail. "The government may reserve such a forum for its intended purposes, communicative or otherwise, as long as the regulation on speech is reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Mansky*, 138 S. Ct. at 1885 (citations and quotations omitted). However, Defendants did not announce any "intended purposes" of the paver installation (other than to raise money) before they invited and then removed Plaintiff's pavers. The only purpose they have announced since – to recognize donors – is obviously a false pretext because they have ignored every other expressive paver, including those like "JOHN 3:16" which mention no donor. Defendants have offered this pretext while admitting to the media their true intent: "The urgency in removing these particular pavers was that they reference the rock which council had previously voted to remove. So, keeping in line with that decision that was made by council, I felt it appropriate to remove those." This is an

"effort to suppress expression merely because public officials oppose the speaker's view." *Mansky*, 138 S. Ct. at 1885.

2. *Government Speech*

Defendants may also argue that the pavers are monuments, a form of government speech. Indeed, "the placement of a permanent monument in a public park is best viewed as a form of government speech and is therefore not subject to scrutiny under the Free Speech Clause." *Pleasant Grove City v. Summum*, 555 U.S. 460, 464 (2009). However, government acceptance of privately-donated monuments represents "a more dramatic form of adoption … unmistakably signifying to all Park visitors that the City intends the monument to speak on its behalf." *Id.* at 474.

If Defendants have truly adopted the pavers as government speech, then they have chosen to willingly violate the Establishment Clause by using a public park to convey such messages as John 3:16 ("For God so loved the world that he gave his one and only Son, that whoever believes in him shall not perish but have eternal life."), Micah 6:8 ("He has shown you, O mortal, what is good. And what does the Lord require of you? To act justly and to love mercy and to walk humbly with your God."), and Jeremiah 29:11-13 ("'For I know the plans I have for you,' declares the Lord, 'plans to prosper you and not to harm you, plans to give you hope and a future. Then you will call on me and come and pray to me, and I will listen to you. You will seek me and find me when you seek me with all your heart.'"). *See, e.g., McCreary County v. American Civil Liberties Union*, 545 U.S. 844, 867 (2005) (even "the [Ten] Commandments are an 'instrument of religion' and that … the display of their text could presumptively be understood as meant to advance religion"). When the City created the paver program, it did not intend to

adopt Bible verses or any other donor's message as its own speech. The pavers are not government speech and must be analyzed using the forum framework above.

Furthermore, the same analysis in *Summum* that protects "monuments" also illustrates why the Defendants' paver program is *not* government speech. In *Summum*, a religious organization made an unsolicited offer to add a large monument to a city park alongside an existing Ten Commandments monument. *Id*. at 465. The city declined, and the organization sued. *Id.* at 465-66. The Supreme Court held that "monuments" were government speech based on several factors. Those factors each weigh against Defendants here.

*Summum* first emphasizes the city's "selectivity" in accepting donated monuments as evidence that the government wishes to agree with the message conveyed. *Id.* at 472-73. "Across the country, municipalities generally exercise editorial control over donated monuments through prior submission requirements, design input, requested modifications, written criteria, and legislative approvals of specific content proposals." *Id.* at 472 (internal quotations omitted). While the city in *Summum* "effectively controlled the messages sent by the monuments in the Park by exercising final approval authority over their selection," Mayor Tergin and the City of Jefferson did not. *Id.* at 473. Instead, Defendants accepted every single paver purchased from them – including Plaintiff's – without question.

The *Summum* majority next draws attention to the fact that "public parks can accommodate only a limited number of permanent monuments," while also being "capable of accommodating a large number of public speakers without defeating the essential function of the land." *Id.* at 478. But while the city park in *Summum* contained nine or ten monuments, the landing on Adrian's Island already contains over fifty pavers, which are no bigger than 15.5 inches

long and take up a miniscule fraction of the total paved area (let alone the whole park). *Summum*'s holding rests in large part on the character of the sizeable monuments in question, but Plaintiff's pavers are nowhere near as burdensome, and may in fact be walked over.

Lastly, *Summum* turns heavily on the unsolicited nature of the offered monument. *Id.* at 479-480. The majority (rightly) spends significant energy on a parade of horribles that parks would be "pressed to accept" if cities had to place dueling monuments in parks without their consent. *Id.* But here, Defendants *invited* the pavers onto City property as a way to raise money and solicited donors to "PROVIDE YOUR MESSAGE." In doing so, they gave the public a voice on City property and gave up absolute editorial control over the pavers.

### 3. Conclusion

For the foregoing reasons, Plaintiff has shown a strong likelihood of success on the merits, and this factor weighs heavily in her favor in granting injunctive relief.

## B. Plaintiff Will Suffer Irreparable Harm

The irreparable harm in this case is straightforward: Plaintiff's speech is being suppressed, and the deprivation of that right is irretrievable and irreparably harmful. Any damages she suffers will be difficult to ascertain, so dollar damages and other traditional remedies are insufficient.

## C. The Balance of Interests Supports Injunctive Relief

Defendants' actions serve no lawful purpose and they have no compelling governmental interest in enforcing it. Because Plaintiff's First Amendment rights easily outweigh Defendants' desire to suppress Plaintiff's protected speech, this factor weighs in Plaintiff's favor.

D.  The Public Interest Supports Injunctive Relief

The public has a strong interest in upholding the Constitution, and it "has no interest in enforcing an unconstitutional ordinance."  *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006).  The public benefits from more speech – not less – and injunctive relief will vindicate their rights as well as Plaintiff's.

**IV. Relief Sought**

Plaintiff Edith Vogel respectfully requests a temporary restraining order and preliminary injunction ordering Defendants to replace and maintain Plaintiff's pavers with her original message.  Plaintiff further requests that, pursuant to Fed. R. Civ. P. 65(d)(2), such order or injunction apply to the above-named Defendants, their officers, agents, employees, and attorneys; and all other persons acting in concert with them.

**Respectfully Submitted,**

*/s/ Cole D. Bradbury*
**COLE D. BRADBURY #62760**
Bradbury Law Firm, LLC
PO Box 206
Osage Beach, MO  65065
(573) 745-0772
Cole.D.Bradbury@Gmail.com
ATTORNEY FOR PLAINTIFF